O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID LEW, a.k.a. SHARK TOOF, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF LOS ANGELES, a government entity; FRIENDS OF THE CHINESE AMERICAN MUSEUM, INC., a California Corporation,<br><br>Defendants. | Case No.: 2:20-cv-10948–DDP (PLAx)<br><br>**ORDER RE: SUMMARY JUDGMENT [131] [132] [133] [144]** |

Upon consideration of the parties' cross-motions for summary judgment, and having heard oral argument, the Court adopts the below order.

**I.     FACTUAL BACKGROUND**

The matter arises from the disposal of 74 screen-printed canvas bags (part of the "Works," identified in greater detail below) during their exhibition at the Chinese American Museum ("CAM"). (FAC ¶ 23; Dkt. 133, Lichtman Decl., Ex. 30 at 15:4-30:14; Dkt. 131, Compendium of Exs., Ex. 4 at 94:17-95:8, Ex. 5 at 57:23-58:3). Plaintiff, David Lew, is an artist and creator of the Works at issue. (Dkt. 133, Lew Decl. ¶ 2; Dkt. 131, Compendium of Exs., Ex. 3 at 126:6-18, Ex. 8). Defendants are the City of Los Angeles

///

("City") and Friends of the Chinese American Museum ("FCAM") (collectively, "Defendants"). (FAC ¶ 4-7).

CAM is located on City property in the El Pueblo district and is managed by FCAM and the City. (FAC ¶ 4; Dkt. 133, Lichtman Decl., Ex. 2, Ex. 3 at 139:1-144:16, 154:19-156:3; Dkt. 131; Compendium of Exs., Ex. 5 at 8:5-22). City employees assist with the installation and removal of items in CAM's courtyard. (Dkt. 131, Id., Ex. 4 at 69:7-17, 98:23-99:4; Ex. 5 at 30:10-31:10, 42:13-20; Ex. 6 at 157:23-158:16). The City had an unofficial policy prohibiting art from being displayed in the courtyard. (Dkt. 131, Id., Ex. 4 at 19:17-20:24).

In January 2018, CAM curators invited Plaintiff to participate in the museum's upcoming "Don't Believe the Hype" Exhibition. (Dkt. 133, Lichtman Decl., Ex. 1 at 125:20-128:16; Ex. 4). Plaintiff provided one completed piece and agreed to create an outdoor installation. (Dkt. 133, Id., Ex. 5 at 34:16-35:1, Ex. 6 at 39:2-17, Ex. 8 ¶¶ 5-7, Ex. 9; Ex. 10 ¶ 7; Dkt. 133, Lew Decl. ¶¶ 8-9; Dkt. 131, Compendium of Exs., Ex. 3 at 126:6-18, Ex. 7 at 39:16-17, Ex. 8).

From February 22 to March 1, 2018, Plaintiff and CAM curator, Justin Hoover, exchanged a series of emails in which Plaintiff proposed selling half of the tote bag pieces himself and the other half through CAM. (Dkt. 131, Compendium of Exs., Ex. 3 at 150:15-21, 151:24-152:2, Ex. 9, Ex. 10). Hoover informed Plaintiff that pursuant to the City's policy CAM was not permitted to sell art. (Id., Ex. 3 at 141:9-14, 176:24-177:1, Ex. 4 at 143:8-21, Ex. 7 at 83:22-25). On March 1, 2018, Plaintiff sent an email stating he would manage the sale of the Works. (Id., Ex. 10).

On March 1, 2018, Plaintiff executed an "Artist Contract" formalizing his agreement with FCAM to create "88 custom made artworks" to be hung in CAM's courtyard. (Dkt. 131, Id., Ex. 3 at 154:24-155:4, Ex. 6 at 32:2-24, Ex. 7 at 89:7-9, Ex. 10, Ex. 11; Dkt. 133, Lichtman Decl., Ex. 1 at 153:19-155:11; Ex. 14; Ex. 15 at 31:14-32:24; Dkt. 133, Lew Decl. ¶ 23). Plaintiff screen-printed his artwork on both sides of the 88 canvas bags.

2

1  (Dkt. 133, Lichtman Decl., Ex. 1 at 92:16-96:24, Ex. 12; Dkt. 133, Lew Decl. ¶¶ 11-13).
2  Plaintiff asserts that each of the 88 Works was hand-finished after the screen-printing
3  process. (Id.; FAC ¶ 16.) The Works were not signed or consecutively numbered. (Dkt.
4  133, Id., Ex. 3 at 76:23-77:9, 185:10-23, 225:25-226:3).

5  On May 4, 2018, Plaintiff offered the Works for pre-sale online. (Dkt. 131,
6  Compendium of Exs., Ex. 1 ¶ 18, Ex. 2 No. 5, Ex. 3 at 44:9-17, 158:11-19, 159:6-7, Ex. 12;
7  Dkt. 133, Lichtman Decl., Ex. 1 at 158:7-160:21; Dkt. 133, Lew Decl. ¶¶ 21-22, 24). Plaintiff
8  pre-sold 14 of the Works. (Dkt. 133, Lichtman Decl., Ex. 1 ¶ 18, Ex. 2 No. 5, Ex. 3 at 55:4-8,
9  160:11-17).

10  CAM operated a gift shop through 2018. (Dkt. 131, Compendium of Exs., Ex. 6 at
11  13:20-14:13). On May 4, 2018, Plaintiff emailed Hoover asking if a "handful" of the
12  remaining Works could be made available at CAM's "merch section." (Id., Ex. 3 at 161:1-
13  164:10, Ex. 13). The same day Hoover responded that Plaintiff would have to execute an
14  agreement approved by El Pueblo for the Works to be sold at CAM. (Id., Ex. 7 at 81:22-
15  82:7, Ex. 14).

16  On May 9, 2018, Plaintiff executed a vendor application form identifying the
17  Works as products for sale through CAM during the Exhibition period of May 18, 2018 to
18  November 4, 2018. (Id., Ex. 3 at 173:3-8; 174:13-19; 179:21-25, Ex. 6 at 43:10-44:22, 161:4-14,
19  Ex. 7 at 24:6-14, 110:16-18, Ex. 15). On May 18, 2018, the Exhibition opened. (Dkt. 133,
20  Lichtman Decl., Ex. 1 at 158:20-22).

21  In October 2018, a storm knocked down 14 of the hanging Works. (Dkt. 131,
22  Compendium of Exs., Ex. 7 at 142:5-15, Ex. 19, Ex. 20). On October 16, 2018, Hoover
23  emailed the City to schedule the removal of the remaining 74 Works. (Id., Ex. 20.) The
24  same day a City employee responded: "I will submit a work ticket to remove all cabling
25  and decorations inside the courtyard." (Id., Ex. 5 at 14:9-13, 46:11-17, Ex. 20.) On October
26  30, 2018, Hoover emailed Plaintiff informing him that some of the hanging Works had
27
28

3

fallen and that the remaining Works would be taken down. (Id., Ex. 3 at 188:17-189:4, 195:3-10, Ex. 19).

On December 6, 2018, Hoover emailed City employee, Walter Schreck, following up on the removal of the Works and requested they be removed by the 13th so CAM's art handlers could pack and move them. (Dkt. 133, Lichtman Decl., Ex. 6 at 271:7-16, Ex. 30 at 48:12-50:14, Ex. 32). On December 7, 2018, Schreck emailed City employee, Jeff Secor, requesting the "cables and bags" be removed. (Id., Ex. 32). The same day Schreck created a work order requesting the removal and disposal of the "strings and decorations." (Id., Ex. 30 at 51:25-55:15, Ex. 33).

On or before December 12, 2018, the City removed and disposed of all of the remaining Works. (Dkt. 131, Compendium of Exs., Ex. 1 ¶ 23, Ex. 4 at 94:17-95:8, Ex. 5 at 30:10-31:10, 42:13-20, 57:23-58:3; Dkt. 133, Lichtman Decl., Ex. 30 at 15:4-30:14). On December 12, 2018, Plaintiff was informed that the Works had been trashed. (Dkt. 133, Lichtman Decl., Ex. 1 at 198:19-203:24; Dkt. 133, Lew Decl. ¶ 32). The 14 Works that were not discarded have been returned to Plaintiff. (Dkt. 131, Compendium of Exs., Ex. 3 at 56:23-57:7).

## II. PROCEDURAL BACKGROUND

Plaintiff's First Amended Complaint alleges causes of action against both defendants for violations of the Visual Artists Rights Act, 17 U.S.C. § 106A ("VARA"); Cal. Civil Code §§ 987(C)(1-2),(E) (California Art Preservation Act, or "CAPA"); California Business and Professions Code § 17200, et seq. (California Unfair Competition Law, or "UCL"); Conversion; Negligence; and Fraud, Misrepresentation and Concealment (or "Fraud"). (FAC ¶ 33-68). This Court dismissed several of Plaintiffs' state law claims (Dkt. 59), leaving the following surviving claims:

| Claim | Status as to City | Status as to FCAM |
|---|---|---|
| VARA | Not dismissed | Not dismissed |

4

| | | |
|---|---|---|
| CAPA – intentional desecration | Dismissed | Dismissed |
| CAPA – grossly negligent desecration | Dismissed | Dismissed |
| Conversion | Dismissed | Not dismissed |
| Negligence | Dismissed | Not dismissed |
| UCL | Dismissed | Not dismissed |
| Fraud | Dismissed | Not dismissed |

The City filed a motion for summary judgment on the VARA claim, arguing that Plaintiffs' Works fit at least six criteria excluding it from VARA protection: the Works were not signed or numbered, they were applied art, they were temporary, they were site-specific, they were promotional, and they were merchandising items. Further, the City argues that Lew waived his VARA protection when he signed the City's Vendor Application Form. Lastly, the City argues that Plaintiff's VARA claim fails because the City did not destroy the Works with the "intentionality, maliciousness, or gross negligence required under VARA."[1] (Dkt. 131-1 at 21).

FCAM likewise filed a motion for summary judgment, containing the same VARA arguments as the City, including that the City lacked the proper state of mind to support a VARA claim. FCAM adds that, unlike the City, FCAM had no hand in destroying the bags. Finally, FCAM argues that it is entitled to summary judgment on Plaintiff's conversion claim, because FCAM returned the 14 non-discarded bags to Plaintiff. FCAM does not apparently seek summary judgment on Plaintiff's claims for Negligence, Fraud, or violation of the UCL.

---

[1] Plaintiff did not move for summary judgment as to the gross negligence issue, instead arguing that it is a matter for the jury to decide.

1  Plaintiff filed a cross-motion for partial summary judgment, arguing he is entitled
2  to judgment as a matter of law that the Works were individual works of visual art
3  covered by VARA, and that he did not waive those rights in his Vendor Application
4  Form. Further, Plaintiff argues that the City is jointly and severally liable for Lew's
5  damages apart from VARA, which may include his state law claims against FCAM and
6  related attorneys' fees. Plaintiff did not move for summary judgment as to his state law
7  claims against FCAM.

## III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is only genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## IV. DISCUSSION

Passed in 1990, VARA extends copyright laws to include "moral rights." Unlike economic rights, moral rights recognize an artist's personal relationship to their work even after it is sold. *See* U.S. Copyright Office Report to Congress, "Waiver of Moral Rights in Visual Artwork" (Oct. 24, 1996), available at https://www.copyright.gov/reports/exsum.html; *Cheffins v. Stewart*, 825 F.3d 588, 598 (9th Cir. 2016) (McKeown, J., concurring) (citations omitted). VARA names two specific moral rights: the "right of attribution" and the "right of integrity." 17 U.S.C. § 106A(a). Lew's VARA claim involves the right to integrity, which includes the right to prevent "any deforming or mutilating changes" or "any destruction" to an artist's work, even after it is sold. *Cheffins*, 825 F.3d at 592 (citing *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 984-85 (9th Cir. 2002)). In protecting moral rights, Congress sought to promote "a climate of artistic worth and honor that encourages the author in the arduous act of creation." H.R. Rep. No 101-514 at 5 (1990).

6

A work of visual art to which VARA applies is defined, in relevant part, as a painting, drawing, print, or sculpture, existing in a single copy, or in a limited addition of 200 copies or fewer that are consecutively numbered. 17 U.S.C. § 101 (quotations omitted). VARA excludes applied art, merchandising items, and promotional material. *Id.*

To determine whether the Works are covered by VARA, the Court must first identify the work or works of visual art at issue. The parties raise conflicting characterizations of the Works. Plaintiff's Motion argues that the Works constitute 88 individual works of visual art. (Dkt. 133-1 at 15.) Defendants' Motions alternatively argue that the Works constitute 88 copies of a single work (and that the lack of consecutive numbering excludes that work from VARA) (Dkt. 131-1 at 11; Dkt. 132-1 at 12) or that the Works constitute 88 component parts of one temporary work (which subjects them to other asserted exceptions from VARA coverage) (Dkt. 131-1 at 15; Dkt. 132-1 at 16). The Court disagrees with both parties' characterizations and finds that the Works are best understood in two categories: an installation work and 88 component tote-bag works, as discussed below.

**A. The Installation Work**

The Works contain 88 pieces, originally displayed as part of an installation called "Year of the Shark Red Packet". (FAC ¶ 15.) The number of pieces, their form (red canvas tote bags), and their mode of exhibition (hung outdoors on clothesline) were all intentional choices and "imbued with personal meaning" to Plaintiff. (FAC ¶¶ 16, 21.)

///
///
///
///
///
///

7



The number 88 reflects the "special reverence and meaning of the number eight" in Chinese culture. (FAC ¶ 15.) The red canvas tote bags and the use of clothesline and clothespins evoke both red Chinese lanterns and the historical role of Chinese Americans in the laundry trade. (FAC ¶ 16). In his deposition, Lew agreed that installation, including the "proper burlap twine" clothesline, clothespins, and 88 tote bag pieces, constituted "one solid art" and a "piece as a whole." (Dkt. 131-3 at 130:9-14.) FCAM's gift shop flyer describes a "public art" installation. (Dkt. 131-3, Exh. 18.)  Taken together, this evidence shows that the installation "Year of the Shark Red Packet" itself is a work of visual art (hereinafter "Installation Work"), consisting of 88 component tote bag pieces, in addition to the clothesline and pins.

1. <u>VARA Coverage Expiration</u>

As to the Installation Work, Defendants argue that its VARA coverage ceased when a storm took down 14 of the component pieces. (Dkt. 142 at 13.) Although the

8

number 88 was, as discussed above, a meaningful aspect of the Installation Work, the Court does not agree that the Installation Work completely ceased to exist when that number was reduced to 74. The Installation Work was still mostly intact after the storm. The allusion to Chinese laundry and Chinese red lanterns persevered, even without 88 tote bag pieces. These elements, and the visual impact of the courtyard-spanning work, continued to bind the Installation Work into a cohesive work of art. Plaintiff's moral rights in the unitary work likewise persisted after the storm.

This result is not altered by the fact that 14 of the component tote bags had been sold and would have been handed over to purchasers after the exhibit ended. Even if Plaintiff created the Installation Work with the intention that it would be eventually split into component tote bags and divided among purchasers, Plaintiff did not agree to have the Installation Work mutilated, destroyed, or left in a dumpster. Indeed, the Court need not weigh in on the extent of the injury to Plaintiff's right to integrity that occurred when the Installation Work was destroyed only some weeks before it was initially scheduled to expire.[2] The relevant and inevitable conclusion is that the Installation Work was Plaintiff's work of visual art when the City discarded it.[3]

2. Vendor Application Form as VARA Waiver

Defendants further argue that Plaintiff waived all VARA protections when he signed the Vendor Application Form on May 9, 2018. (*See* Dkt. 133-3 at Ex. 15.) However,

---

[2] According to Plaintiff, the Installation Work was intended to remain up until December 2018. (Dkt. 133-2 at ¶ 13).

[3] Defendants cite to *Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128, 143 (1st Cir. 2006), for the proposition that site-specific art is not subject to VARA protections. Defendants do not meaningfully develop their argument that this Court should extend *Phillips* and apply its holding to the Installation Work here. Instead, Defendants note that "courts have found" that site-specific art does not constitute a "work of visual art" under VARA. This Court declines to apply that non-binding conclusion to the Installation Work.

9

1 even assuming Plaintiff did waive his VARA rights as to the component tote bag pieces,[4]
2 the Form did not refer to the Installation Work as a whole. *See* 17 U.S.C. §106(A)(e)(1)
3 (requiring that VARA waivers "specifically identify the work, and uses of that work, to
4 which the waiver applies"). Instead, the Form applies to "74 pcs. Year of the Shark
5 Double Sided Tote Bags," which were to be sold in the gift shop for $88 each. (Ex. 15 at 5).
6 Thus, the Form does not contemplate the Installation Work as a whole and does not
7 constitute a VARA waiver as to the same.

        3. <u>Gross Negligence</u>

Finally,[5] Defendants argue that their destruction of the Installation Work amounted, at most, to "negligence in the ordinary sense." (Dkt. 131-1 at 22; Dkt. 132-1 at 23). Because VARA proscribes only "intentional or grossly negligent" destruction of artwork, Defendants argue, they are entitled to judgement as a matter of law that they did not violate VARA.

The circumstances surrounding the destruction of the Installation Work are as follows: CAM curator Justin Hoover requested that the City "remove the bags from the courtyard" by December 13th, so CAM's "art handlers [could] work on packing them up." (Dkt. 133-35). City employee Walter Schreck then forwarded the request to fellow city employees Jeff Secor and Raul Pelayo asking that they "remove the cables and bags" from the courtyard. *Id.* By Defendants' own admission, the City confused the Installation Work with Chinese lantern decorations that had previously hung in the CAM courtyard. (Dkt. 131-1 at 9). Thus, instead of preserving the tote bag pieces for art handlers, per

---

[4] Plaintiff argues that the Form does not constitute a VARA waiver at all, for reasons that the Court need not take up here.

[5] Several of Defendants' arguments do not apply when considering the Installation Work as a unitary piece. For example, in their arguments that the exceptions for promotional or merchandising material should apply, Defendants rely on the fact that the tote bags were eventually sold. The Installation Work as a whole was not sold, even if its components later were.

10

Hoover's request, the City "mistook them for trash and threw them away." (Dkt. 131-3 at Ex. 4 at 95:6-8).

Viewing these facts in the light most favorable to Plaintiff, the non-moving party on this issue, the Court cannot conclude that no reasonable factfinder could deem these circumstances amounted to intentionality or gross negligence. On the contrary, the facts in the record could very well lead a jury to conclude that the City was grossly negligent in mistaking the Installation Work for trash. Thus, Defendants' motion for summary judgment on the issue of gross negligence is denied.

\*\*\*

As to the Installation Work, in conclusion, the Court finds that its VARA coverage did not expire as soon as the storm took down 14 tote bag pieces; the VARA waiver, if it existed, did not apply to the Installation Work as a whole; and, at a minimum, a genuine factual dispute as to gross negligence precludes summary judgment in favor of Defendants.

**B**. **The Individual Tote Bag Works**

The Court's finding that the 88 (and later, 74) tote bag pieces, hung with clothespins and clothesline in the courtyard, were one work of visual art does not preclude the Court from considering the individual tote bag pieces works of visual art as well. But even assuming the individual tote bags (hereinafter, "Tote Bag Works") were works of visual art under 17 U.S.C. § 101, Circuit precedent constrains the Court to find that those Works would be excluded as applied art under VARA.

In *Cheffins v. Stewart*, the Ninth Circuit held that the VARA exception for applied art applies where the object comprising the work of visual art "initially served a utilitarian function" and "continues to serve such a function after the artist made embellishments or alterations to it." 825 F.3d 588, 594 (9th Cir. 2016). The Installation Work does not fit this test, because the tote bags it contained were hung up deliberately to resemble laundry and lanterns, and did not serve a utilitarian function.

11



But the Tote Bag Works on their own do fit this test. They were sold as "hand-made tote bags," and purchasers were promised "the actual bag that was on display." (Dkt. 131-3, Ex. 18; *see also* Dkt. 131-3 at Ex. 17 ("We are selling these *actual bags*.") (emphasis added).) Even under the *Cheffins* concurrence's "more nuanced" test, asking whether a work "is primarily directed to a utilitarian purpose," the Tote Bag Works are applied art. *Cheffins*, 825 F.3d at 602 (McKeown, J., concurring). Asked how purchasers could use the Tote Bag Works after purchasing them, Plaintiff stated, "[Y]ou can use it for whatever you would like to use it. It is an object." (Dkt. 131-3, Ex. 3 at 231:23-24.)

VARA gives artists' rights to prevent modification or destruction of their work even after sale of that work, and it makes logical sense that those rights do not hold water

for applied art. Unlike other works of visual art, applied art—such as the Tote Bag works—can easily be damaged, mutilated, destroyed by wear and tear, and eventually discarded by purchasers. Plaintiff evinced an understanding of this logical conclusion when he stated that purchasers of the Tote Bag Works could use the Works for whatever they would like.

Because the Court concludes that the Tote Bag Works were applied art, it need not address Defendants' other proffered exceptions to VARA. The Tote Bag Works, unlike the Installation Work, are excluded from VARA, and Plaintiffs VARA claims as to the Tote Bag Works are dismissed.

### C. The City's Joint and Several Liability

Plaintiff additionally argues that the City is jointly and severally liable for Plaintiff's state law claims against FCAM as a matter of law. The Court previously dismissed Plaintiff's state law claims against the City as time-barred under California's Government Claims Act ("CGCA"). (Dkt. 59.) Plaintiff argues that California Government Code Section 814 provides relief for claims "pursuant to contract," independent of the CGCA time restriction. Although Plaintiff may be correct that the City and FCAM were in a joint partnership pursuant to contract, Plaintiff's state law claims against FCAM--conversion, negligence, fraud, and violation of the UCL—are not breach of contract claims. As the City points out, and as the Court has already ruled, these tort claims are subject to CGCA's time limitations. Thus, Plaintiffs' motion for summary judgment on the issue of the City's joint liability for state law claims is denied.

### D. FCAM's Conversion Liability

Last, the Court takes up FCAM's argument that it did not convert Plaintiff's property. In his Complaint, Plaintiff seeks conversion damages for the destruction of all 88 of the Tote Bag Works, but notes:

///

///

13

"Further, on information and belief it is possible that in the alternative to destroying all 88 works of art, there are still 14 works of art that were not destroyed but have been converted by Defendants CAM/FCAM and so a distinct claim against those Defendants exists for the conversion of those 14 works of art []." (Dkt. 42, ¶ 49.)

FCAM seeks summary judgment on this claim, because "the 14 tote bags that remained have been returned to Plaintiff, and FCAM was not involved with the act of discarding the 74 bags that remained suspended within the installation." (Dkt. 132 at 3.) Plaintiff's Opposition only addressed the first element of FCAM's summary judgment argument: that the 14 Tote Bag Works had since been returned to Plaintiff. (Dkt. 139 at 7-8.) The Court thus considers the second element of FCAM's argument—that FCAM was not involved with the act of discarding the 74 Tote Bag Works—conceded. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000).

As to the conversion of the 14 Tote Bag Works, FCAM does not dispute that it kept those Works in storage from 2018 until June 9, 2022. (Dkt. 143 at 8.) Although it will be Plaintiff's burden at trial to prove damages based on that conversion, FCAM has the initial burden, in its motion for summary judgment, to show a lack of that evidence. *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."). FCAM did not meet any such burden in its Motion, which stated only that the bags had been returned to Plaintiff.[6] FCAM's Motion as to this issue is therefore denied.

---

[6] In its reply, FCAM claims that Plaintiff lacks evidence of damages. (Dkt. 143 at 8). But, as the Court has already said in this case, "[i]t is well established that arguments raised

14

## V. CONCLUSION

In conclusion, the Installation Work constitutes a work of visual art subject to VARA protections, but the Tote Bag Works do not. The Court further denies Plaintiff's motion for summary judgment on the issue of the City's joint and several liability, denies Defendants' motion for summary judgment on the issue of gross negligence, and denies FCAM's motion for summary judgment on the issue of FCAM's liability for conversion.

**IT IS SO ORDERED.**

DATED: September 13, 2023

_____
**DEAN D. PREGERSON**
**United States District Judge**

---

for the first time in a reply brief are waived." *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).